EDWARDS, JUDGE PRO TEMPORE, J.
This is a personal injury action for damages sustained in a slip and fall near the entrance of the Treasure Chest Casino, L.L.C. (Treasure Chest). The judgment on appeal is the grant of summary judgment in favor of defendant/appellee, Treasure Chest. For the reasons set forth herein, we affirm that judgment.
FACTS AND PROCEDURAL HISTORY
Plaintiff/appellant, Linda Cangelosi, was walking with her son from the parking lot to the entrance of the Treasure Chest Casino on December 16, 2015. The fall occurred under the porte cochere, an outdoor open-ended tent that covers a portion of the roadway leading to and from the walkway entrance of the casino. A video of the fall shows that Ms. Cangelosi slipped and fell as she stepped from the roadway onto the walkway. The video also shows the ground was very wet, with puddles in both the roadway and the walkway.
Ms. Cangelosi testified in her deposition that on the day of the accident, she went to the casino at about 6:00 p.m. with her son and a friend. Ms. Cangelosi explained that she and her son went there about three times a month to listen to music. This had been their custom for a "couple of years." On the day of the accident, it had rained all day and the ground was wet. Ms. Cangelosi arrived by vehicle under the porte cochere. It appears that they took advantage of the valet service provided by Treasure Chest. Ms. Cangelosi got out of the vehicle and walked across two traffic lanes. Then, as she stepped onto the adjacent walkway, she slipped in a puddle. One foot went out in front and the other went back, causing her to fall and injure her knee, hip, back and arm. Treasure Chest employees came out to assist and an emergency medical team was called. Ms. Cangelosi declined an offer to be taken to a hospital and went into the casino. About 45 minutes later, when she began experiencing pain in her right hip, she left the casino and went home.
Ms. Cangelosi stated that she consulted Dr. Van Wormer the next day and treated with him for about a year. On Dr. Wormer's advice, Ms. Cangelosi consulted a neurologist who prescribed pain medication for her back pain. Since the accident, Ms. Cangelosi has been in pain and now requires the use of a walker.
Ms. Cangelosi filed this action for damages on March 24, 2016. Upon completion of discovery, Ms. Cangelosi filed a motion for summary judgment on July 3, 2017. On July 28, 2017, Treasure Chest filed a motion for summary judgment and a motion to strike the affidavit attached to Ms. Cangelosi's summary judgment motion. The *562 trial court denied Ms. Cangelosi's motion for summary judgment and granted Treasure Chest's motion for summary judgment on November 16, 2017.[1] Ms. Cangelosi timely appealed that judgment.
Ms. Cangelosi appears in proper person in this Court and has filed three motions to allow her son, Clayton Cangelosi, to orally argue for her before this Court. Considering that Clayton Cangelosi is neither a party to this litigation nor a duly licensed attorney, we denied the motions, finding that he cannot act in a representative capacity in this appeal.
LAW AND ANALYSIS
The first issue before this Court is the argument by Treasure Chest that the appeal should be dismissed and/or stricken because Ms. Cangelosi's pro se brief is not in conformance with Uniform Rules-Courts of Appeal, Rule 2-12.4. We agree with appellee that Ms. Cangelosi's brief is not in conformance with Rule 2-12.4 in that it does not contain several required items, including a statement of the jurisdiction of the court, a concise statement of the case, specification of errors, or issues for review. However, it does set forth the basic premise of her argument on appeal.
Rule 2-12.4 does not provide for the dismissal of the appeal as a penalty for violating the rule.[2] Uniform Rules-Courts of Appeal, Rule 2-12.13, which addresses non-compliant briefs, provides that "[b]riefs not in compliance with these Rules may be stricken in whole or in part by the court, and the delinquent party ... may be ordered to file a new or amended brief." Thus, the sanction to be imposed for a non-conforming brief is left to the discretion of the court.[3] In the matter before us, we find that striking Ms. Cangelosi's brief would deprive her of her right to appeal and would be an unreasonably. Accordingly, we maintain Ms. Cangelosi's appeal and will consider the arguments made in her brief.
In her first argument, Ms. Cangelosi asserts the trial court erred in denying her "Motion and Order to Release Evidence." The motion was filed on January 9, 2018 and relates to a "flash drive" video of the fall. The trial court denied that motion on January 10, 2018. Ms. Cangelosi argues she was unable to properly present her claim or prepare her brief without that flash drive. It is not clear from the brief which flash drive Ms. Cangelosi is referring to in this argument, or how the lack of access to the drive hindered the presentation of her claim or the preparation of her appeal brief. However, a video of the fall, and a flash drive were admitted into evidence in the trial court and have been made a part of the record in this Court. Although a party unrepresented by counsel is not permitted to withdraw a record from this Court, that party can make arrangements to view the record.[4] Therefore, Ms. Cangelosi had access to the evidence and could have made arraignments with *563 this Court to view the video. She made no such request. Accordingly, we find no merit in this argument.
The remainder of Ms. Cangelosi's arguments relate to the grant of the defense summary judgment. She asserts the walkway was defective and unreasonably dangerous, causing her to fall. Specifically, she argues the water on the walkway was brought in by passing cars and shuttle busses, and that a hazardous condition existed in the area of the fall due to improper drainage. Ms. Cangelosi also makes the claim that she has met her burden of proving a hazardous condition exists by her allegation that "all kinds of debris and liquids", including oils, dirt, and other dangerous slippery substances were on the walkway.
Treasure Chest responds that summary judgment was properly granted because Ms. Cangelosi cannot prove a defect that presented an unreasonably dangerous condition about which Treasure Chest failed to warn its patrons. Treasure Chest asserts it used a non-skid product on the walkway that was specifically identified in response to an interrogatory. Further, Treasure Chest argues that any reference to the parish drainage code cannot be considered since this is new evidence and this argument was not made in the district court. Finally, Treasure Chest maintains Ms. Cangelosi simply slipped on the wet walkway in rainy weather.
Summary judgment is a procedural device to secure the just, speedy, and inexpensive resolution of an action.[5] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, admitted for the purposes of the summary judgment motion reveal that there are no genuine issues of material fact.[6] The party moving for summary judgment has the burden of establishing the absence of a genuine material fact.[7] If the moving party will not bear the burden of proof at trial, the moving party must only point to an absence of factual support for one or more elements of the adverse party's claim, action or defense.[8] The non-moving party, then, must produce evidence to show he will be able to meet his burden of proof at trial.[9] If the non-moving party cannot show he will be able to meet his evidentiary burden, there is no issue of material fact, and the moving party is entitled to judgment as a matter of law.[10] A fact is material for purposes of summary judgment if its existence or non-existence is essential to the plaintiff's cause of action or theory of recovery.[11]
The appellate standard of review of a summary judgment is well-settled. Under that standard, the appellate court must review the summary judgment de novo , viewing the record and making all reasonable inferences that may be drawn from it in the light most favorable to the non-movant.[12]
In the matter before us, Ms. Cangelosi makes the claim that an unreasonably dangerous condition of the walkway to the entrance of the Treasure Chest *564 Casino caused her to slip and fall, resulting in injuries.
La. C.C. art. 2317.1 provides that; "(t)he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."
La. C.C. art. 2322 further provides that; "(t)he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."
Thus, to prove liability for an unreasonably dangerous defect, a plaintiff has the burden to show that the thing was in the custodian's custody or control, it had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the unreasonable risk of harm, and that the damage was caused by the defect.[13]
Under article 2317.1, a defect is a condition creating an "unreasonable risk of harm," which requires the trier of fact to decide whether the social value and utility of a hazard outweighs, and thus justifies, its potential harm to others.[14] The fact that a pedestrian fell on a walkway does not automatically elevate the condition of that walkway to that of an unreasonably dangerous defect.[15] The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.[16]
The degree to which the danger is evident to the plaintiff is one factor in determining whether the condition is unreasonably dangerous.[17] If the facts of a particular case show that the complained of condition should be obvious and apparent to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.[18] This Court has explained that:
Specifically, in a trip and fall case, the duty is not solely with the landowner. A pedestrian has a duty to see that which should be seen and is bound to observe whether the pathway is clear. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care *565 or which was as obvious to a visitor as it was to the landowner.[19]
In support of its motion for summary judgment, Treasure Chest attached the depositions of both Ms. Cangelosi and her son in which they acknowledge they knew it had rained much of the day and that the ground was wet. Ms. Cangelosi also admitted she was wearing open-back "crock" shoes with little or no tread when she slipped. Treasure Chest attached answers to interrogatories that show the surface of the stamped concrete walkway was treated with H & C SharkGrip Slip-Resistant Additive, a protective non-skid coating. Treasure Chest also provided affidavits from two employees that establish that about 2,759 patrons entered the casino on the day of the fall without incident, and that no complaints were received regarding slippery conditions near the entrance or under the porte cochere.
Ms. Cangelosi argues that a dangerous condition was established by her assertion that the stamped concrete portion of the walkway carried "not only water but all kinds of debris and liquids (oils, dirt, and other dangerous slippery substances etc.)." However, plaintiff offered no evidence that anything other than water was on the walkway, and there is no evidence in the video to support her claim.
The video shows the fall occurred on a concrete surface that was painted to mark the transition from the parking lot to the stamped concrete walkway into the casino. It is also clear from the video that the area was very wet due to the fact that it was a rainy day, and that there were some puddles caused by the rain. The video shows that Ms. Cangelosi stepped directly into a puddle, causing her to slip and fall. The puddle is an obviously hazard to be avoided.
Ms. Cangelosi also argues that Treasure Chest is not in compliance with the Kenner City Ordinance relating to proper drainage. However, Ms. Cangelosi presented no evidence to support this assertion.
The unreasonable risk of harm inquiry is a "disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or the trier of facts."[20] Thus, whether a defect presents an unreasonable risk of harm must be determined in light of facts and circumstances of each particular case.[21]
Under the circumstances of the matter before us, we find there are no material facts, the existence or non existence of which is essential to plaintiff's cause of action, remaining at issue. Treasure Chest supported its motion with evidence that the walkway was not defective, and Ms. Cangelosi has presented no evidence establishing any genuine issue of material fact relating to her claim that it was unreasonably dangerous. Additionally, the hazard causing the fall, the wet ground and puddles, were obvious to the plaintiff. Thus, given the law cited herein, we find Ms. Cangelosi will not be able to meet her burden of proof under the law. Accordingly, we find the trial court did not err in granting the motion for summary judgment filed by the Treasure Chest. The judgment of the trial court granting the *566 defense motion for summary judgment is hereby affirmed.
AFFIRMED

The trial court also denied Treasure Chest's motion to strike as moot.

Although the Uniform Rules-Courts of Appeal, Rule 2-12.4 requires an appellant in this court to assign errors in his brief, La. C.C.P. art. 2129 provides otherwise. See also Clark v. Dep't of Police, 2012-1274 (La. App. 4 Cir. 2/20/13), 155 So.3d 531, writ denied, 2013-0642 (La. 4/26/13), 112 So.3d 846, in which the court, relying on Rocque v. Dept. of Health and Human Resources, Office of Secretary, 505 So.2d 726, 728 (La.1987), held that an appellant in a civil service matter need not assign specific errors committed by the Civil Service Commission in his motion, application, or notice of appeal.

Richardson v. N. Oaks Hosp. , 2011-1258 (La. App. 1 Cir. 2/13/12), 91 So.3d 361, 364-65.

Uniform Rules-Courts of Appeal Rule 2-6.

Boutall v. Christakis, P.M., Co. LLC , 17-402 (La. App. 5 Cir. 12/27/17), 236 So.3d 1268, 1272.

La. C.C.P. art. 966.

Id.

Boutall, 236 So.3d at 1272.

Id.

La. C.C.P. art. 966(C)(2).

Brown v. Manhattan Life Ins. Co. , 01-0147 (La. 6/29/01), 791 So.2d 74, 78.

Boutall, 236 So.3d at 1272.

Baudy v. Travelers Indem. Co. of Connecticut , 13-832 (La. App. 5 Cir. 4/9/14), 140 So.3d 125, 131, and cases cited therein.

King v. Allen Court Apartments II , 2015-0858 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 840, writ denied, 2016-0148 (La. 3/14/16), 189 So.3d 1069.

Monson v. Travelers Property, 06-921 (La.App. 5 Cir. 4/24/07), 955 So.2d 758, 761.

Id.

Moore v. Oak Meadows Apartments, 43,620 (La. App. 2 Cir. 10/22/08), 997 So.2d 594, 598.

Pitre v. Louisiana Tech University, 95-1466 (La. 5/10/96), 673 So.2d 585, 591 (citations omitted).

Babino v. Jefferson Transit , 12-468 (La. App. 5 Cir. 2/21/13), 110 So.3d 1123, 1126. (citations omitted)

Reed v. Wal-Mart Stores, Inc. , 97-1174 (La. 3/4/98), 708 So.2d 362, 364 (quoting Tillman v. Johnson , 612 So.2d 70 (La. 1993).

Todd v. Angel , 48,687 (La. App. 2 Cir. 1/15/14), 132 So.3d 453, 458-59, writ denied, 2014-0613 (La. 5/16/14), 139 So.3d 1027.