| PERRINE CHAUMONT | * | NO. 2020-CA-0017 |
| --- | --- | --- |
| VERSUS | * | |
| | | COURT OF APPEAL |
| THE CITY OF NEW ORLEANS | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-10273, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods)

**LEDET, J., CONCURRING**

Keith M. Whipple
P.O. Box 790
Bourg, LA 70343

    COUNSEL FOR PLAINTIFF/APPELLANT

Daniel T. Smith
ASSISTANT CITY ATTORNEY
Shawn Lindsay
DEPUTY CITY ATTORNEY
Churita H. Hansell
CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
SENIOR CHIEF DEUPTY CITY ATTORNEY
Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street
City Hall - Room 5E03
New Orleans, LA 70112

    COUNSEL FOR DEFENDANT/APPELLEE

                **AFFIRMED
JUNE 3, 2020**

*RBW*

*SCJ*

This appeal stems from an administrative case involving the short-term rental of a residential property located in New Orleans, Louisiana. After a hearing before an administrative hearing officer in which the Plaintiff-Appellant was found to have violated certain provisions of the New Orleans City Code and the Comprehensive Zoning Ordinance governing short-term rental properties, Plaintiff-Appellant lodged an appeal with the Civil District Court for the Parish of Orleans. After a hearing, the trial court affirmed the decision of the administrative hearing officer. It is from this affirmation that Plaintiff-Appellant now appeals. For the reasons that follow we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 18, 2017, Defendant-Appellee, City of New Orleans, ("the City"), notified Plaintiff-Appellant, Perrine Chaumont, ("Appellant"), via letter, that it was aware that the residential property she owned, which is located at 1829

Joseph Street ("the property") was being used as a short-term rental, and that Appellant was required to obtain a short-term rental permit in order to continue operating. The letter also described the requirements for permit licenses and set forth the penalties for operating a short-term rental without a permit. Thereafter, on May 29, 2017, an application was filed for a short-term rental permit of the property, which was described as the full side of a double with three (3) bedrooms.[1] The City issued a short-term rental license for the property, which permitted Appellant to rent three (3) bedrooms for a total guest occupancy of six (6); the license was valid for one (1) year and expired on its own terms on July 13, 2018.

On June 27, 2017, the City discovered that the property was listed on a vacation rental website, VRBO, with an occupancy of four (4) bedrooms that sleeps (14) fourteen guests and failed to include a license number, in violation of the City ordinances.[2] The City sent a violation letter on July 20, 2017, and advised of the possible penalties for noncompliance, that included the following: fines up to $500 per day, court costs, liens, suspension or revocation of license, and/or termination of utility service. On January 9, 2018, the City sent a subsequent letter, notifying Appellant of suspected violations[3] of the City ordinances and again set

---

[1] The application was filed by Christopher Whipple. The Orleans Parish Tax Assessor's Office lists both Christopher Whipple and Appellant as owners with a homestead exemption on the property.

[2] The City explained that an inspector recorded a screenshot of the advertisement.

[3] The suspected violations included: City of New Orleans Code §26-615(c), which requires short-term rental operators to provide a valid permit number on listing advertisements and Comprehensive Zoning Ordinance art. 21.8.C.14(b)(4), which limits occupancy to two (2) guests per bedroom or a total of ten (10) guests, whichever is fewer.

forth penalties for said violations. The letter advised Appellant to correct the short term rental's listing to reflect the occupancy limits set forth by its license and to include the valid permit number.

On January 16, 2018, the City discovered that the property was listed on another rental website, this time Booking.com, as a four (4) bedroom home that sleeps sixteen (16) guests.[4] On July 3, 2018, the City mailed Appellant a notice of an administrative hearing set for July 18, 2018, and advised Appellant that the property violated the City of New Orleans Code Section 26-615(c),[5] which requires short-term rental operators to provide a valid permit number on listing advertisements, and Comprehensive Zoning Ordinance 21.8.C.14(b)(4),[6] which limits occupancy to two guests per bedroom or ten total guests, whichever is

---

[4] The City explained that an inspector recorded a screenshot of the advertisement.

[5] City Code §26-615, states, in pertinent part:

> (a) Upon satisfactory submission of the required documentation in Section 26-614, the Department of Safety and Permits may issue an annual Short-term Rental License Permit.
> …
>
> (c) The permit holder shall provide the valid permit number on any listing advertising or soliciting the property for use as a short-term rental. The permit holder shall only advertise the short-term rental as allowed by their short-term rental permit.

[6] Comprehensive Zoning Ordinance art. 21.8.C.14(b), provides, in pertinent part:

> 1. A Short-term Rental license shall be secured prior to operation; and Short-term Rental operators shall comply with all applicable license requirements provided in the Code of the City of New Orleans.
> …
>
> 4. Occupancy shall be limited to two (2) guests per bedroom or ten (10) guests, whichever is less.

fewer.[7] The hearing notice was mailed to the address listed for the owners of the property, and was also posted at the property on July 10, 2018.

After multiple continuances, on October 3, 2018, the matter proceeded to an administrative hearing before Administrative Hearing Officer Schalyece Harrison ("the Hearing Officer") under Case No. 17-07944-RENT.[8] At the hearing, the parties were sworn-in and the City's representative and Short-term Rental Administrator, Berrian Eno-Van Fleet, introduced various exhibits, including the application and the temporary short-term license permit for the property, the violation letters, the notice of hearing, the proof of mailing and posting of the notice, as well as screenshots from the VRBO and Booking.com websites. The screenshots were offered to show that the property's listings were not in compliance with the City's ordinances, which require license numbers to be posted on the advertisement and that the number of rooms and guests correspond with the limits set forth in the short-term rental permit.

After hearing the arguments and considering the evidence introduced, the Hearing Officer found Appellant to be in violation of both ordinances. Further, the Hearing Officer imposed a $1,000 fine ($500 for each of the violations) and $75 in court costs. The Hearing Officer also instructed Appellant to cancel all outstanding reservations on the property, provide the City with documentation of the

[7] These ordinances were re-codified in December 2019.

[8] The matter was originally set on July 18, 2018, but was continued until August 22, 2018. On August 22, 2018, counsel for Appellant appeared and the matter was reset again to September 12, 2018. In September 2018, Appellant's counsel requested additional time and the hearing was rescheduled until October 3, 2018.

cancellations, and remove the online listings of the property within twenty-four (24) hours.[9] Judgment to this effect was executed on October 10, 2018.

Thereafter, on October 11, 2018, Appellant filed a petition of suspensive appeal and injunctive relief with the Civil District Court for the Parish of Orleans. In response, the City filed an opposition to the petition for injunctive relief on November 28, 2018.

On January 11, 2019, the trial court held a hearing on Appellant's Preliminary Injunction wherein she requested that the City be restrained "from interfering with [the] business establishment pending [the] suspensive appeal." At the conclusion of the hearing, the trial court, without rendering a decision, allowed Appellant and the City to file post-hearing memoranda. In response, the trial court held over the injunction issue to a trial, which was to be conducted with the suspensive appeal.

On April 17, 2019, a trial was conducted on Appellant's suspensive appeal and injunction. At the conclusion of the trial, the trial court took the matter under advisement. On October 1, 2019, the trial court issued a judgment, as well as reasons for judgment, denying Appellant's suspensive appeal and injunctive relief and affirming the administrative judgment rendered on July 3, 2018, by the City. It is from this judgment that Appellant now appeals.

---

[9] The Hearing Officer warned Appellant, after Appellant's vocal unwillingness to comply without a written judgment, that her lack of compliance would result in an additional hearing to assess daily fines.

## ASSIGNMENTS OF ERROR

On appeal, Appellant raises the following assignments of error:

(1) Whether the trial court erred in affirming the decision of the administrative hearing officer because it was found upon an improper record, unsubstantiated hearsay, incompetent evidence and the sole witness in the proceeding admitted she did not procure any of the evidence or exhibits;

(2) Whether the trial court erred in dismissing Appellant's appeal of the administrative hearing officer's decision and rendering a judgment without requiring the hearing officer to dictate into the record her findings of facts and conclusions of law in contravention of the Administrative Procedure Act ("APA") and Appellant's due process rights to a full and fair hearing;

(3) Whether the trial court erred in failing to find the New Orleans City Code regulating home sharing by private homeowners was unconstitutional, in violation of their rights under the First, Fourth, Fifth, and Eighth Amendments, and failing to find the ordinances were unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

Appellant *mentions* the first two assignments of error in his appellate brief, but fails to fully argue the merits thereof. Pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Further, Rule 2-12.13 of the Uniform Rules, Courts of Appeal addresses non-compliant briefs and provides that "[b]riefs not in

6

compliance with these Rules may be stricken in whole or in part by the court, and the delinquent party or counsel of record may be ordered to file a new or amended brief." Thus, the sanction to be imposed for a non-conforming brief is left to the discretion of the court. *Cangelosi v. Treasure Chest Casino, L.L.C.,* 18-72, p. 3 (La. App. 5 Cir. 7/31/18), 252 So.3d 559, 562, *writ denied*, 2018-1446 (La. 11/20/18), 256 So.3d 997. Accordingly, this Court may decline to consider the first and second assignments of error on these grounds. *State v. Anderson*, 97–2587, pp. 9-10 (La. App. 4 Cir. 11/18/98), 728 So.2d 14, 20 (stating that "any specification or assignment of error not briefed is considered abandoned").

In the appellate brief, Appellant fully briefed the third assignment of error; however, none of the constitutional arguments were properly raised before the trial court and thus are waived on appeal. Before the trial court, Appellant only argued that the City ordinances were unconstitutional by violating the Equal Protection and Due Process clauses of the Fourteenth Amendment, but failed to elaborate further.[10] Appellant's arguments with respect to the First, Fourth, Fifth, and Eighth Amendments were not pled before the trial court and thus are now raised for the first time on appeal.[11] It is well settled that appellate courts will not consider issues

---

[10] In the petition for suspensive appeal and injunctive relief, Appellant merely alleged that the "ordinance enacted by the City of New Orleans is unconstitutional as violating the Equal Protection and Due Process clauses of the United States and Louisiana Constitutions." Additionally, Appellant did not raise any constitutional challenges before the administrative hearing officer.

[11] The petition did claim that the judgment imposed by the administrative hearing officer was draconian in nature but did not invoke the Eighth Amendment. Moreover, this Court recently upheld a $3,000 fine for violating the City's short-term rental ordinances. *See Nola Bourbon, LLC v. City of New Orleans,* 2019-0847, p. 5 (La. App. 4 Cir. 1/29/20), 290 So.3d 225, 229 (finding that a hearing officer's judgment of $500 fine per violation was not excessive where the evidence showed that the property owner's violations had been and continued to be ongoing). Here, the websites' screenshots established that the property was listed with room and guest

7

raised for the first time, which are not pleaded in the court below and which the district court has not addressed. *Council of City of New Orleans v. Washington*, 2009-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856. The longstanding jurisprudential rule of law in Louisiana is that litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specifically pleaded and the grounds for the claim particularized. *Id*. 2009-1067, p. 4, 9 So. 3d. at 857 (citing *Mosing v. Domas*, 2002–0012 (La.10/15/02), 830 So.2d 967; *Vallo v. Gayle Oil Co*., 1994–1238 (La.11/30/94), 646 So.2d 859). "The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute." *Id*. (citing *State v. Hatton*, 2007–2377, p. 14 (La.7/1/08), 985 So.2d 709, 719).

Here, because Appellant argued that the ordinances violated the First, Fourth, Fifth, and Eighth Amendments for the first time on appeal, she waived those constitutional challenges. The only constitutional argument raised below was the Fourteenth Amendment Equal Protection and Due Process claims, though the grounds thereof were not specifically pled.[12]

---

capacities in excess of what the short-term license allowed. The record further shows the rental license expired at the time of the hearing. Additionally, Appellant listed the property for rent between $500 and $600 a night, and thus the fines appear proportional. As such, the hearing officer's imposition of $500 fines for each violation, including $75 for hearing costs, was not excessive.

[12] The appellate brief does not argue violations of equal protection.

# DISCUSSION

## *Standard of Review*

This Court in *Nola Bourbon, LLC v. City of New Orleans*, 2019-0847, pp. 2-4 (La. App. 4 Cir. 1/29/20), 290 So.3d 225, 227–28, summarized the law on appeals taken from administrative proceedings involving violations of city ordinances as follows:

> A party aggrieved by a final agency decision in an adjudication proceeding is entitled to have that decision reviewed initially by the district court of the parish in which the agency is located. La. R.S. 49:964(A)(1) and (B). The district court acts in the capacity of an intermediate appellate court. A party aggrieved by the district court's decision is entitled to appeal to the appropriate appellate court as in other civil cases. La. R.S. 49:965. When an appellate court reviews the district court's judgment, no deference is owed by the appellate court to the district court's fact findings or legal conclusions, "'just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Thus, ***an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court.***'" *Bourgeois v. Louisiana State Racing Comm'n,* [20]10-0573, p. 7 (La. App. 4 Cir. 11/12/10), 51 So.3d 851, 856 (quoting *Smith v. State, Dep't of Health and Hospitals*, 39,368, pp. 4-5 (La. App. 2d Cir. 03/02/05), 895 So.2d 735, 739).

> The standard of appellate review of an administrative agency's decision is distinct from and narrower than that which applies to ordinary civil and criminal appeals. *Reaux v. Louisiana Bd. of Med. Examiners*, [20]02-0906, p. 3 (La. App. 4 Cir. 5/21/03), 850 So.2d 723, 726. The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G) of the Administrative Procedure Act ("APA"). *Armstrong v. Louisiana State Bd. of Medical Examiners*, [20]03-1241, pp. 9-11 (La. App. 4 Cir. 2/18/04), 868 So.2d 830, 837-38.

9

*DMK Acquisitions & Properties, L.L.C. v. City of New Orleans*, [20]13-0405, p. 8 (La. App. 4 Cir. 9/18/13), 124 So.3d 1157, 1163 (quoting *Clark v. Louisiana State Racing Comm'n,* [20]12-1049, pp. 9-11 (La. App. 4 Cir. 12/12/12), 104 So.3d 820, 826-27).

Under La. R.S. 49:964(G), a reviewing court may affirm an administrative decision or remand the case for further proceedings; the court may also reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;

or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues. [Emphasis added].

*Id*.

### Assignment of Error Number One

As his first assignment of error, Appellant contends that the trial court erred in affirming the administrative hearing officer's decision because it was based

upon improper unsubstantiated hearsay evidence and the only witness did not procure the evidence offered at the hearing. Pursuant to La. R.S. 49:956(1):

> **Agencies may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs.** They shall give effect to the rules of privilege recognized by law. Agencies may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. Objections to evidentiary offers may be made and shall be noted in the record. Subject to these requirements, when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form.[13] [Emphasis added].

Further, La. C.E. art. 801(C) provides that "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "[H]earsay evidence may be admitted in administrative hearings if it is competent evidence." *Honore' v. Dep't of Pub. Works*, 2014-0986, pp. 13-14 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1129-30 (citing *Diggs v. Dep't. of Police*, 2012–1276, p. 7 (La. App. 4 Cir. 4/24/13), 115 So.3d 1150, 1154; *Broaden v. Dep't. of Police*, 2003-1427, pp. 6–7 (La. App. 4 Cir. 1/14/04), 866 So.2d 318, 322; *Taylor v. New Orleans Police Dep't,* 2000–1992 (La. App. 4 Cir. 12/12/01), 804 So.2d 769, 772). "Hearsay evidence qualifies as competent evidence if it has a degree of reliability and trustworthiness such that a reasonable person would rely upon it." *Id*. at p. 14, 178

---

[13] The City specifically adopted the evidentiary rules of the APA. New Orleans City Code § 6-36(g) provides: "[a]ny administrative adjudication hearing held under the provisions of this article shall be conducted in accordance with the rules of evidence of the Administrative Procedure Act, R.S. 49:950 *et seq*. Testimony of any person shall be taken under oath and shall be recorded."

So.3d at 1130 (citing *Broaden*, 2003–1427, p. 7, 866 So.2d at 322). "Furthermore, the admission of such hearsay evidence in an administrative hearing must not infringe upon any constitutional principles." *Johnson v. Dep't of Police*, 2008-0467, p. 12 (La. App. 4 Cir. 12/10/08), 2 So.3d 501, 509 (citing Taylor, 2000-1992, p. 5, 804 So.2d at 773).

At the administrative hearing, Eno-Van Fleet, the City's Short-term Rental Administrator, introduced several exhibits, as follows: the application for the property, filed on May 29, 2017, requested permission to rent a full side of a double with three (3) bedrooms; the temporary license, issued July 14, 2017, for the property allowed Appellant to rent three (3) bedrooms for a total guest occupancy of six (6), which expired on July 13, 2018; a screenshot, captured on June 27, 2017, of the listing on the VRBO website, which advertised the property as a four (4) bedroom that could sleep fourteen (14) people and featured a hallway with a trundle bed that pulled out two beds; reviews in which previous guests indicated that fourteen (14) people had stayed at the property in January 2017, and groups of twelve (12) and thirteen (13) guests had stayed at the property in March 2017; a screenshot, captured on January 16, 2018, of a Booking.com listing that described the property as a four (4) bedroom house that sleeps sixteen (16) guests; a screenshot, captured on August 21, 2018, of a Booking.com listing that described the property as a four bedroom that sleeps sixteen (16) people; a screenshot, captured on August 21, 2018, of a VRBO listing that did not include the license number and described the property as a four (4) bedroom home for ten (10) guests

that featured a trundle bed in a hallway to accommodate additional guests. At the hearing, although Eno-Van Fleet admitted that she did not "personally procure" the exhibits, as the short-term rental administrator she supervises all short-term rental violation investigations. She further explained that the City inspectors who acquired the documents work under her direct supervision and they work together as a team to investigate violations of the City's ordinances and regulations pertaining to short-term rental properties.

The City contended that the exhibits relating to the advertisements that Appellant posted on VRBO and Booking.com are non-hearsay pursuant to La. C.E. art. 801(D)(2), which provides:

> D. Statements which are not hearsay. **A statement is not hearsay if**:
> …
>
> (2) Personal, adoptive, and authorized admissions. **The statement is offered against a party and is**:
>
> (a) **His own statement**, in either his individual or a representative capacity;
>
> (b) A statement of which he has manifested his adoption or belief in its truth; or
>
> (c) **A statement by a person authorized by him to make a statement concerning the subject**. [Emphasis added].

Here, Appellant posted the property on the VRBO and Booking.com websites to advertise it as a short-term rental. The statements regarding the number of guests allowed and the omission of the permit number is a personal admission by Appellant, and does not qualify as hearsay. However, even if the screenshots

did constitute hearsay, as noted above, hearsay evidence is admissible in administrative hearings provided the evidence is determined to be competent. *Honore'*, 2014-0986, pp. 13-14, 178 So.3d at 1129-30.

The Louisiana Supreme Court, in *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, pp. 12-13 (La. 3/4/98), 708 So.2d 375, 382, explained the term "competent evidence" in the administrative hearing context as evidence having "some degree of reliability and trustworthiness" and "of the type that reasonable persons would rely upon." Further, the Louisiana Supreme Court instructed that the determination of whether evidence is "competent" is one that "must be made on a case-by-case basis under the particular facts and circumstances." *Chaisson*, 97–1225 at p. 13, 708 So.2d at 382. The Supreme Court explained that "most hearsay evidence in administrative hearings is generally reliable documentary evidence, such as correspondence, physician's reports, and the like." *Chaisson*, 97–1225 at p. 11, 708 So.2d at 382.

Here, considering the nature of web-based short-term rentals—screenshots of the online rental advertisements appear to be the type of evidence that reasonable persons would rely upon to demonstrate violations of the City's regulations. Further, Eno-Van Fleet testified that as the short-term rental administrator she was involved in investigating property violations and indicated that any information obtained from the City inspectors, such as the website screenshots, was at her instruction. As such, even if the evidence against Appellant qualifies as hearsay, it does not appear that the Hearing Officer abused her

discretion in allowing these documents into evidence. Thus, we find that this assignment of error lacks merit.

***Assignment of Error Number Two***

As the second assignment of error, Appellant argues that the trial court erred in dismissing the suspensive appeal because the Hearing Officer failed to dictate her findings of fact and conclusions of law as required by the APA. Specifically, La. R.S. 49:958 of the APA provides, in pertinent part:

> A final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. **A final decision shall include findings of fact and conclusions of law.** Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. [Emphasis added].

However, the APA applies only to state agencies. Specifically, La. R.S. 49:951(2) defines agency as follows:

> (2) "Agency" means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, **except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof**, and the courts. [Emphasis added].

Further, as provided by La. Const. art. VI, § 44(2), a "political subdivision" is defined as "a parish, municipality, and any other unit of local government,

including a school board and a special district, authorized by law to perform governmental functions."

The City is a municipality and, as such, the City's administrative hearing officer is excluded from complying with the APA and thus is not bound by the dictates of La. R.S. 49:958. *See George v. Dep't of Fire,* 637 So.2d 1097, 1103 (La. App. 4 Cir. 1994) (finding that the clear language of the APA excludes the City Civil Service Commission from its coverage); *Franklin v. City of Alexandria*, 2018-634, p. 12 (La. App. 3 Cir. 5/1/19), 272 So.3d 120, 127 (APA did not apply to the City Council, the legislative arm of the City, a political subdivision of the State).[14] Moreover, even if the Hearing Officer in this case was subject to the provisions of La. R.S. 49:958, her failure to include findings of fact and conclusions of law in her decision was not fatal.

Louisiana jurisprudence provides that "where the findings and reasons therefor are necessarily implicit in the record and the administrative determination is supported and sustainable by a preponderance of the evidence, the administrative decision is not invalid merely because the agency failed to explicitly articulate that which is self-evident." *In re Ark-La-Tex Antique & Classic Vehicles, Inc.,* 2005-1931, p. 7 (La. App. 1 Cir. 9/15/06), 943 So.2d 1169, 1174 (citing *Summers v. Sutton,* 428 So.2d 1121, 1128 (La. App. 1 Cir. 1983)).

---

[14] The evidentiary rules of the APA, however, do apply to City administrative hearings. New Orleans City Code §6-36(g) provides: "[a]ny administrative adjudication hearing held under the provisions of this article shall be conducted in accordance with the rules of evidence of the Administrative Procedure Act, R.S. 49:950 et seq. testimony of any person shall be taken under oath and shall be recorded."

Here, the City presented evidence that showed the Appellant violated the City's ordinances by exceeding the occupancy limit allowed for short-term rentals and by failing to include the license number on websites advertising the property. Appellant did not offer any evidence in opposition. While the Hearing Officer did not expressly articulate the basis for her decision pursuant to La. R.S. 49:958, the reasons for her ruling are evident from the record. Thus, the failure to provide factual findings or conclusions of law does not invalidate the Hearing Officer's ruling.

Further, the Hearing Officer's failure to abide by La. R.S. 49:958 does not violate Appellant's due process rights to a full and fair hearing. The record reflects that Appellant had notice of both the hearing and the ordinances that were allegedly violated. Further, the January 9, 2018 violation letter advised Appellant of the possible penalties, including fines and the suspension of or revocation of the short-term rental license for noncompliance. Additionally, the hearing on the matter was reset three (3) times, at Appellant's request. Appellant objected to the evidence offered at the hearing and cross-examined the City's witness, Eno-Van Fleet. Appellant also had the opportunity to present countervailing evidence, but failed to do so. The City provided sufficient notice of the ordinance violations, and Appellant was afforded a reasonable opportunity to be heard; thus, Appellant's due process rights were not violated. Thus, this assignment of error lacks merit.

*Assignment of Error Number Three*

As the third assignment of error, Appellant claims that the trial court erred in failing to find the ordinances, which regulate home sharing by private homeowners, unconstitutional. Specifically, Plaintiff argues that the ordinances violate homeowners' First, Fourth, Fifth, and Eighth Amendments and are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

As discussed herein-above, because Appellant failed to raise these constitutional arguments with regard to the First, Fourth, Fifth, and Eighth Amendments before the trial court, these arguments are not properly before this Court.[15] Additionally, Appellant's vagueness claim was also not raised in the proceedings below. Therefore, the only constitutional issues properly before this Court on review are those related to the Fourteenth Amendment due process claims.[16] It is important to note that Appellant challenged the current ordinances on short-term rentals, which were not in effect at the time of the administrative adjudication. As such, they are not ripe for our consideration.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any state deprive any person of life, liberty or property, without due process of law." In addition, La. Const. art. I, § 2 provides "[n]o

---

[15] The City, in its brief in opposition, argued that Appellant's constitutional arguments are waived on appeal, but nevertheless addressed each of the alleged constitutional violations.

[16] Appellant also claimed that the City's ordinances violated the Equal Protection Clause of the Fourteenth Amendment, but did not raise this issue on appeal.

person shall be deprived of life, liberty, or property, except by due process of law."

*Oliver v. Orleans Par. Sch. Bd*., 2014-0329, 2014-0330, p. 34 (La. 10/31/14), 156 So.3d 596, 619.

The Louisiana Supreme Court explained

> An ordinance, like a state statute, is presumed to be constitutional. In construing an ordinance, courts use the same guidelines as those used in construing a state statute. The presumption of a statute's constitutionality is especially forceful when statutes are enacted to promote a public purpose. Unlike the federal constitution, the provisions in Louisiana's constitution are not grants of power, but instead are limitations on the otherwise plenary power of the people. Pursuant to La. Const. art. VI, a municipal authority governed by a home rule charter possesses powers in affairs of local concern within its jurisdiction that are as broad as those of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter.

*City of Baton Rouge/Par. of E. Baton Rouge v. Myers,* 2013-2011, 2013-2036, pp. 4-5 (La. 5/7/14), 145 So.3d 320, 327 (citing *Fransen v. City of New Orleans*, 2008-0076, p. 10 (La. 7/1/08), 988 So.2d 225, 233). "Because statutes are presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality." *Fransen*, 2008-0076, p. 11, 988 So.2d at 234 (citing *Wooley v. State Farm Fire & Cas. Ins. Co.,* 2004–0882, p. 19 (La.1/19/05), 893 So.2d 746, 762).

The current provisions governing short-term rentals are contained in Chapter 26, Article IX, of the New Orleans Code of Ordinances. Specifically, City Code Ordinance §26-624 sets forth the authority of the department of safety and permits to issue licenses and provides, in pertinent part:

(a) Receive short-term rental applications. The department shall receive and process all short-term rental permit applications and determine applicant eligibility.

(b) Issue eligible short-term rental permits. The department shall issue permits only to eligible applicants, as determined by the department.

Further, City Code Ordinance §26-627 addresses the suspension of an owner's permit and procedures and provides:

(a) If the department has good cause to believe that the use of a dwelling unit as a short-term rental presents an imminent threat to public health, safety, or welfare, the director of the department, by issuance of a written order stating the reasons for such belief, may immediately suspend the short-term rental owner permit with respect to the unit without a hearing. The department shall transmit notice of the director's written order within 24 hours of the determination, and shall send said order to the owner's contact information provided to the department in the owner permit application.

(b) No dwelling unit subject to an order of suspension may be used as a short-term rental.

(c) Within 14 days of the written order of suspension, a short-term rental owner may request a hearing in writing, directed to the director of the department. The hearing shall take place within seven business days of the written request for a hearing. If the owner fails to timely request a hearing, the short-term rental owner's permit shall be deemed revoked.

Further, City Code Ordinance §26-628(c) also provides that the "decision to suspend or revoke a permit shall be at the discretion of the hearing officer based on the severity of the violation and any other mitigating or aggravating circumstances surrounding the violation."

Also, City Code Ordinance §26-629 addresses penalties for violations of ordinances and provides:

20

(a) Any person who violates this article or the Comprehensive Zoning Ordinance shall be subject to a fine of not less than $500.00 for each offense. Each day that such violation exists shall constitute a separate and distinct offense. Multiple violations can occur during a single guest stay, and may be noticed and heard in a single administrative hearing.

(b) In addition to any fine or penalty imposed by this article, the city may seek all available relief in a court of competent jurisdiction to enjoin any violation.

(c) The city may seek any remedy to compel compliance with the requirements of this article or any correlating provision in the Comprehensive Zoning Ordinance, including the discontinuance of electrical service and the filing of property liens.

(d) The city may revoke or suspend any and all permits required by this article, as provided herein. If a permit issued pursuant to this article is revoked, such revocation shall remain in effect for a period of one year from the date of revocation. The duration of suspensions shall be as dictated by the hearing officer's order.

Appellant contends that the aforementioned ordinances violate her due process rights because the ordinances leave discretion to officials as to whether to grant or revoke a license and allow the City to revoke licenses without a hearing. Appellant also claims that the fines imposed are both adjudicated by the City and also paid to the City, which creates a conflict of interest in violation of due process.

It is well settled that the City has the authority to initiate legislation and enforce zoning ordinances. *See* Art. II, Sec. 2-101 of the City of New Orleans Home Rule Charter; *City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.*, 93-0690 (La. 7/5/94), 640 So.2d 237, 244-45. Additionally, operating a short-term rental is a privilege, not a right. *See* Sec. 26-615(c) (stating that short-term rental permits are "regulated privileges, not rights, and can be revoked or

suspended by the city in accordance with the provisions provided herein"). Further, City inspectors are not afforded unfettered discretion in granting short-term licenses because City Code Ordinance §26-617 explicitly sets forth the requirements for obtaining a short-term rental permit. Moreover, contrary to Appellant's assertions, the ordinances do require notice and an opportunity to be heard before penalizing a homeowner; City Code Ordinance § 26-626(b) provides that "[n]otice and hearing requirements for determining violation(s) shall be in accordance with the administrative procedures provided in Chapter 6, Article II of the Code of the City of New Orleans." City Code Ordinance §6-36, provides for those administrative procedures and states in relevant part:

> (a) Whenever the city agency having enforcement responsibility determines that a Code violation exists, a notice of violation(s) shall be provided to the owner(s).
>
> (b) A notice of violation(s) shall:
>
>> (1) Be in writing;
>>
>> (2) Provide the municipal address of the cited property;
>>
>> (3) Provide the date of the inspection;
>>
>> (4) Provide notice of alleged Code violation(s) at the cited property;
>>
>> (5) Provide the mailing address and telephone number of the enforcement agency;
>>
>> (6) Provide the time, date and location of the administrative hearing whereby the alleged Code violation shall be adjudicated;
>>
>> (7) Provide notice that the failure to appear at the hearing shall be considered an admission of liability for the alleged violation(s);

(8) Provide the risk of fees, penalties, costs, and liens that may be imposed for continued violation(s); and

(9) Provide the risk of remedial measures that may be ordered by a hearing officer to correct or abate Code violation(s).

(c) Prior to holding an administrative hearing pursuant to this article, the alleged violator shall be notified at least 15 days in advance of the date that such a hearing is scheduled. Notice shall be personally served or sent to the alleged violator by regular and certified or registered U.S. Mail at the address listed in the assessor's office of the parish. The date of the postmark shall be deemed to be the date of delivery. Any notification so sent and returned by the U.S. Post Office shall be considered as having fulfilled the notification requirement. Proof of notification and attempts at service shall be entered in the record for each case prior to the hearing.

(d) In addition to the service provided in subsection (c), a copy of the notice of violation(s) shall be affixed in a prominent location on the property upon which violation(s) are alleged or, if safe access to the property is not reasonably practicable, on some prominent fixture on the adjacent public right-of-way as near as possible to the property at least five days in advance of the date of the hearing. It shall be unlawful for any person other than an agent of the city to remove a notice posted on the public right-of-way prior to the commencement of the hearing.

Moreover, City Code Ordinance §6-41 provides that persons who are found to be liable for a code violation by a hearing officer "may appeal the determination to the civil district court for the parish." Additionally, a homeowner's short-term rental permit is revoked by a hearing officer and it is only revoked without a hearing by a City inspector in response to emergency situations such, an imminent threat to public health, safety, or welfare. Sec. 26-628(c); Sec. 26-627(a).

Because the current City's ordinances provide the eligibility requirements for obtaining a short-term rental permit, require notice of a violation, require notice

23

of hearing, require a hearing before a hearing officer before imposing penalties, allow the penalties to be appealed, and absent a threat to public safety provide an opportunity for a hearing before revoking a license, the ordinances do not violate the homeowner's constitutional right to due process.

With regard to the City's adjudication and collection of fines, Appellant correctly states that the United States Fifth Circuit held that due process is violated when an adjudicator imposes and administers court fees. *See Cain v. White*, 937 F.3d 446, 454 (5th Cir. 2019) *cert. denied,* 140 S. Ct. 1120 (2020).[17] However, according to the City, the hearing officer does not have a monetary interest in the result of the adjudications and their salaries and benefits are the same irrespective of whether they find that a person violated the ordinances. Also, the Department of Safety and Permits is "funded by the City's general fund and remits all fines collected back to the City's general fund" and the Department "does not keep those fines, and its annual budget is not tied to the amount of fines it collect." *Id*. Accordingly, it does not appear that the City has a direct financial incentive to find

---

[17] In *Cain v. White*, 937 F.3d 446, the plaintiffs challenged the assessment of fines and fees against criminal defendants by the judges of Orleans Parish Criminal District Court ("OPCDC"). The fines and fees collected were mostly directed to the Judicial Expense Fund (JEF), making up about one-quarter of the JEF. The judges have exclusive control over how the JEF is spent. Although the JEF did not go towards their salaries, it funded salaries and employment-related benefits of staff, CLE travel, conferences and legal education, office supplies, jury expenses, professional liability insurance for the judges, etc. *Id*. at 448-49. The district court held that "with respect to all persons who owe or will incur court debts arising from cases adjudicated in OPCDC, and whose debts are at least partly owed to the OPCDC Judicial Expense Fund, the Judges' failure to provide a neutral forum for determination of such persons' ability to pay is unconstitutional." *Id*. at 451. The court of appeals summarized the issue as "whether the Judges' administrative supervision over the JEF, while simultaneously overseeing the collection of fines and fees making up a substantial portion of the JEF, crosses the constitutional line." *Id*. The court of appeals affirmed, concluding that "when everything involved in this case is put together, the 'temptation' is too great." *Id*. at 454.

violations and assess fines. Here, Appellant failed to meet his burden of establishing that the ordinances are unconstitutional. Thus, this assignment of error lacks merit.

## <u>CONCLUSION</u>

For the aforementioned reasons, we affirm the trial court's judgment.

**AFFIRMED**